Jeremy A. Moseley (#44830177)
Hannah R. Seifert (#42358613)
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado  80202
Telephone:   303.244.1800
Facsimile:   303.244.1879
Email:   moseley@wtotrial.com
            seifert@wtotrial.com

*Attorneys for Defendant USAA General Indemnity Company*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JAMES C. GARNER,<br><br>Plaintiff,<br><br>v.<br><br>USAA GENERAL INDEMNITY COMPANY, a Texas Corporation; and JANE/JOHN DOES A-Z,<br><br>Defendants. | Case No. 9:19-cv-00059-KLD<br><br>Magistrate Judge Kathleen L. DeSoto<br><br>**USAA GIC'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION ............................................................................ 1

SUMMARY OF UNDISPUTED FACTS ............................................ 3

LEGAL STANDARD ....................................................................... 5

ARGUMENT ................................................................................. 6

I.   PLAINTIFF'S BREACH OF HIS DUTIES UNDER THE POLICY IS
     FATAL TO HIS UTPA CLAIM ................................................... 7

II.  PLAINTIFF'S NONCOMPLIANCE WITH THE INSURANCE
     POLICY VITIATES COVERAGE ............................................... 8

     A.   Plaintiff Breached the Policy by Concealing and
          Misrepresenting Material Facts About his Medical Condition........... 9

     B.   Plaintiff's Material Misrepresentations Vitiate Coverage ................. 13

     C.   Plaintiff's Lack of Cooperation and Refusal to Sign a Required
          Medical Authorization Also Precludes Coverage ............................ 18

CONCLUSION .............................................................................. 22

CERTIFICATE OF COMPLIANCE WITH L.R. 7.1(d)(2) .................................. 24

# TABLE OF AUTHORITIES

## CASES

*ALPS Prop. & Cas. Ins. Co. v. McLean & McLean, PLLP*,
  425 P.3d 651 (Mont. 2018) ........................................................13, 14

*Am. Pepper Supply Co. v. Fed. Ins. Co.*,
  93 P.3d 507 (Ariz. 2004)...................................................................16

*Anderson v. Liberty Lobby Inc.*,
  477 U.S. 242 (1986)............................................................................ 5

*Baldwin v. Bankers & Shippers Ins. Co. of N. Y.*,
  222 F.2d 953 (9th Cir. 1955)............................................................16

*Boesel v. State Farm Fire and Cas. Ins. Co.*,
  565 Fed. App'x 611  (9th Cir. 2014) ........................................15, 16

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).........................................................................5, 6

*Chaachou v. Am. Cent. Ins. Co.*,
  241 F.2d 889 (5th Cir. 1957)............................................................17

*Contractors Bonding & Ins. Co. v. Sandrock*,
  321 F. Supp. 3d 1205 (D. Mont. 2018)...........................................20

*CQI, Inc. v. Mountain W. Farm Bureau Mut. Ins. Co.*,
  CV 08-134-BLG-CSO, 2011 WL 13196206
  (D. Mont. Feb. 16, 2011) ................................................................. 8

*Duke v. Hartford Fire Ins. Co.*,
  617 F.2d 509 (8th Cir. 1980)............................................................16

*EOTT Energy Operating Ltd. P'ship v. Certain Underwriters at Lloyd's of London*,
  59 F. Supp. 2d 1072 (D. Mont. 1999).........................................7, 18

*Friez v. Nat'l Old Line Ins. Co.*,
  703 F.2d 1093 (9th Cir. 1983)..........................................................17

*Gonzales v. Gonzales*,
  20 So.3d 557 (La. App. 4th Cir. 2009),
  *writ denied*, 27 So.3d 305 (La. 2010) ...............................................16

*Herbert v. State Farm Mut. Auto. Ins. Co.*,
  362 Fed. App'x 748 (9th Cir. 2010) ...............................................16

*Herman v. Safeco Ins. Co. of Am.*,
  17 P.3d 631 (Wash. App. Div. 2 2001) ......................................21, 22

*Holland v. State Farm Mut. Auto. Ins. Co.*,
  No. 2:12-cv-01058-LDG-GWF, 2014 WL 1268712
  (D. Nev. Mar. 27, 2014)...................................................................22

*Keller v. Nat'l Farmers Union Prop. & Cas. Co.*,
  CV 12-72-M-DLC-JCL, 2013 WL 27731
  (D. Mont. Jan. 2, 2013) ...................................................................11

*Long v. Ins. Co. of N. Am.*,
  670 F.2d 930 (10th Cir. 1982)..........................................................16

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)..........................................................................6

*McDonald v. N. Ben. Ass'n*,
  131 P.2d 479 (Mont. 1942) ..............................................13, 14, 15

*Perovich v. Glens Falls Ins. Co.*,
  401 F.2d 145 (9th Cir. 1968)............................................................15

*Peschel v. City of Missoula*,
  686 F. Supp. 2d. 1107 (D. Mont. 2009)............................................5

*Schlemmer v. N. Cent. Life Ins. Co.*,
  37 P.3d 63 (Mont. 2001) ..................................................................15

*Seymour v. Safeco Ins. Co. of Illinois*,
  CV 13-49-BU-DLC-RWA, 2015 WL 12591708
  (D. Mont. May 13, 2015) ...........................................................passim

iii

*State v. Henderson*,
   343 P.3d 566 (Mont. 2015) ............................................................... 8

*Truck Ins. Exch. v. Waller*,
   828 P.2d 1384 (Mont. 1992) ............................................................ 7

*Tyler v. Fireman's Fund Ins. Co.*,
   841 P.2d 538 (Mont. 1992) ............................................................15

*Valentine v. State Farm Mut. Auto. Ins. Co.*,
   105 F. Supp. 3d 1176 (D. Nev. 2015)...................................19, 20, 21

*Waste Mgmt., Inc. v. Int'l Surplus Lines Ins. Co.*,
   579 N.E.2d 322 (Ill. 1991) .............................................................19

*Williams v. Mut. Life Ins. Co. of New York*,
   201 P. 320 (Mont. 1921) ................................................................15

## STATUTES

Mont. Code Ann. § 33-15-403 ............................................................13

## RULES

Fed. R. Civ. P. 56..............................................................................  5

## OTHER AUTHORITIES

2019 Montana Laws Ch. 315 (S.B. 240) ..............................................13

USAA General Indemnity Company ("USAA GIC") files this brief in support of its motion for summary judgment, and states as follows:

## INTRODUCTION

In this first-party insurance case, Plaintiff James Garner violated several clauses in his auto policy in an attempt to obtain tens of thousands of dollars in Medical Payments ("MedPay") benefits for alleged car-accident injuries. Once Plaintiff's concealment of highly relevant medical records came to light in litigation, he voluntarily dismissed his breach-of-contract claim and is relying on the "no hindsight" rule to attempt to limit USAA GIC's defense to the evidence he hand-selected during the adjustment of the claim.[1] Plaintiff's material breaches of the Policy, however, vitiate coverage and defeat his remaining claim as a matter of law.

The medical evidence unearthed during litigation demonstrates that Plaintiff materially breached the Policy by withholding medical records that contradicted his MedPay claim and refusing to provide a medical release authorization, as requested by USAA GIC, that would have allowed USAA GIC to discovery the contrary information in his medical records. Specifically, the previously withheld

---

[1] Plaintiff has filed a motion seeking to preclude admission of the previously withheld medical records on this basis at trial. (ECF No. 96.)

records show that Plaintiff demanded and received payment from USAA GIC for treatment scheduled <u>before</u> the February 11, 2016 motor vehicle accident. Plaintiff's refusal to provide a medical release authorization to USAA GIC ensured that only the records he selected would be considered. Further, Plaintiff's attorney admitted at deposition that he had additional VA medical records in his possession but did not submit the records to USAA GIC. These records would have notified USAA GIC that portions of the treatment USAA GIC paid for were scheduled or prescribed before the accident, and USAA GIC would not have paid for such treatment. This conduct violates the Policy's misrepresentation, cooperation, and medical authorization provisions.

As set forth below, Plaintiff's claim for violation of Montana's Unfair Trade Practices Act ("UTPA") fails for two independent reasons. First, the undisputed facts show that Plaintiff violated the Policy's misrepresentation provision by seeking payment for medical treatment ordered <u>before</u> the accident, while withholding the pertinent records that would have revealed Plaintiff's referral for this treatment predated the accident. Second, Plaintiff violated the Policy's cooperation and medical authorization provisions by refusing to provide a signed medical release and failing to provide material medical records that were specifically requested. Because Plaintiff's breach of the insurance contract vitiates

2

coverage, the UTPA claim fails. Accordingly, summary judgment should be granted and this case dismissed.

## SUMMARY OF UNDISPUTED FACTS

The undisputed facts show that Plaintiff not only failed to cooperate with USAA GIC's investigation of his MedPay claim by refusing to provide a medical release and medical records when requested, but he <u>knowingly concealed</u> crucial medical records that contradicted his claim. *See* Statement of Undisputed Facts ("SUF"), ¶¶ 5, 9-22.[2] Plaintiff understands that, as an insured making a claim under the Policy, he has a contractual duty to cooperate with USAA GIC and authorize USAA GIC to obtain medical information. Nonetheless, Plaintiff refused to provide a signed medical release authorization, which USAA GIC requested in April 2016. *Id.* ¶¶ 2-6. Instead of providing a release, Plaintiff's attorney collected medical records and decided what information would be presented to USAA GIC for the claim. *Id.* ¶ 9. When Plaintiff submitted a policy limit demand that included over $6,000 in bills from the VA, adjuster O'Grady requested all of the supporting medical records. *Id.* ¶¶ 13-14. But Plaintiff's attorney provided only two later VA

---

[2] USAA GIC incorporates its Statement of Undisputed Facts, filed concurrently herewith.

records—records he felt were "concise and direct" and would not "divert attention from the bills that [Plaintiff] wanted to be paid." *Id.* ¶¶ 9-11, 15.

Records obtained pursuant to this Court's order granting USAA GIC's motion to compel discovery reveal Plaintiff  misrepresented the essential medical facts when he requested—and <u>received</u>—reimbursement from USAA GIC for physical therapy and a cervical MRI, without disclosing records showing that these treatments were started before the subject February 11, 2016 accident. *Id.* ¶¶ 17-22. The MRI was scheduled, and the physical therapy course was started, <u>before</u> the subject accident; both aimed to treat Plaintiff's chronic cervical pain and cervical radiculopathy—the stated reason for surgery. *Id.* Yet Plaintiff, though his attorney, represented to USAA GIC that the MRI and physical therapy were necessitated by the accident, and "selected" records that seemed to support this assertion, while concealing contradictory records (and refusing to sign a medical authorization that would enable USAA GIC to obtain <u>all</u> relevant records). *Id.* Based on his misrepresentations, Plaintiff was reimbursed for uncovered medical expenses that USAA GIC would not otherwise have paid, if the relevant records had been fully and properly disclosed. *Id.* at ¶¶ 19-25.

## LEGAL STANDARD

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is 'genuine' if there is sufficient evidence for a reasonable fact finder to find for the non-moving party." *Peschel v. City of Missoula*, 686 F. Supp. 2d. 1107, 1115-16 (D. Mont. 2009) (citing *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248-49 (1986)). "A fact is 'material' if it may affect the outcome of the case." *Id.* at 1116.

A defendant moving for summary judgment "must produce evidence which either: (1) negates an essential element of the non-moving party's claim, or (2) shows that the non-moving party does not have enough evidence of an essential element to ultimately carry his burden at trial." *Peschel*, 686 F. Supp. 2d at 1115. The burden then shifts to the non-moving party, who must "go beyond the pleadings" and cite "specific facts showing that there is a genuine issue for trial." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). A party opposing summary judgment cannot rely on assertions of "some metaphysical doubt," but must "identify evidence establishing that a dispute as to a particular material fact is

genuine." *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

## **ARGUMENT**

Plaintiff's sole remaining claim in this lawsuit alleges that USAA GIC violated Montana's UTPA by "wrongfully denying [his] med pay claims, thereby causing [him] to suffer injury, harm and loss[.]" (ECF No. 79, ¶ 52 (Fifth Am. Compl.).)[3] USAA GIC asserts in defense that Plaintiff's claim is "barred by his misrepresentation and concealment of material facts" and "because he has failed to comply with his duties after a loss as stated in the Policy and further has breached his duty to cooperate under the Policy." (ECF No. 82, pp. 12-13, at ¶¶ 7, 9 (USAA GIC's Answer).) Plaintiff's undisputed breach of essential duties under the Policy—the duty not to conceal or misrepresent, the duty to cooperate, and the duty to authorize collection of medical records—precludes coverage, and is therefore fatal to his UTPA claim.

---

[3] Plaintiff's breach-of-contract claim was dismissed with prejudice. (ECF No. 75.)

## I.    PLAINTIFF'S BREACH OF HIS DUTIES UNDER THE POLICY IS FATAL TO HIS UTPA CLAIM

Under Montana law, "where there is no coverage, there is no bad faith." *EOTT Energy Operating Ltd. P'ship v. Certain Underwriters at Lloyd's of London*, 59 F. Supp. 2d 1072, 1076 (D. Mont. 1999) (citing *Truck Ins. Exch. v. Waller*, 828 P.2d 1384, 1388 (Mont. 1992)). In granting the plaintiff's motion to exclude evidence discovered in litigation on a UTPA claim, the court in *EOTT* explained, had the defendants shown on summary judgment that "Plaintiff had made a false claim, this Court would have found that there was no coverage," and, therefore, "no bad faith." *Id.* That situation exists here.

In *Waller*, as well, the Montana Supreme Court affirmed summary judgment in favor of the insurer seeking a declaration that there was no coverage for an airplane accident based on the policy's aircraft exclusion. 828 P.2d at 1386. Determining that the bad faith claim was "premised upon the existence of . . . coverage for the airplane accident," and "[b]ecause the policies excluded coverage," the Montana Supreme court held the "claims of bad faith . . . fail[ed] as a matter of law." *Id.* at 1388.

Further, in *Seymour v. Safeco Ins. Co. of Illinois*, CV 13-49-BU-DLC-RWA, 2015 WL 12591708, at *2-3 (D. Mont. May 13, 2015), this Court granted summary judgment on the plaintiffs' UTPA claim because they had violated their

duties under the Policy. Indeed, because the plaintiffs had "violated the cooperation clause," they "were unable to establish that they were entitled to additional payments," and therefore could not "prove damages resulting from Defendant's handling of the insurance claim." *Id.*

Likewise here, Plaintiff's breach of his essential duties under the Policy precludes coverage and thus also precludes recovery under the UTPA.

## II.   PLAINTIFF'S NONCOMPLIANCE WITH THE INSURANCE POLICY VITIATES COVERAGE

The insurance policy provides that USAA GIC will "not provide any coverage under this policy for any person who has knowingly concealed or misrepresented any material fact or circumstance relating to this insurance . . . [i]n connection with the presentation or settlement of a claim." SUF ¶ 23. This provision is enforceable under Montana law. *See, e.g., State v. Henderson*, 343 P.3d 566, 568 (Mont. 2015) (affirming order requiring restitution to insurer based on policy provision stating that concealment by insured "either before or after a claim has been submitted" relieves insurer of any payment obligation under the policy); *see also CQI, Inc. v. Mountain W. Farm Bureau Mut. Ins. Co.*, CV 08-134-BLG-CSO, 2011 WL 13196206, at *1 (D. Mont. Feb. 16, 2011) (allowing insurer to add affirmative defense that insured's claim is "barred for violation of the concealment, misrepresentation, or fraud provisions" of insurance policy).

8

### A.   Plaintiff Breached the Policy by Concealing and Misrepresenting Material Facts About his Medical Condition

Here, USAA GIC has asserted as an affirmative defense Plaintiff's material misrepresentation and concealment of facts that were material to his claim. (ECF No. 82, pp. 13-14, at ¶ 9.) The undisputed facts show that Plaintiff, via his attorney, violated the prohibition on "concealment or misrepresentation" by seeking reimbursement for treatment of cervical pain ostensibly caused by the accident—while withholding key records of pre-existing cervical pain (and treatments for that pain) <u>immediately before</u> the accident. Having refused to sign the medical authorization that he knew USAA GIC needed in order to directly obtain his medical records, Plaintiff provided his insurer with a carefully hand-picked subset of his medical records, while deliberately omitting and concealing those records that contradict his claim. SUF ¶¶ 4-10. *See also* **Ex. T**, Supplemental Expert Opinion Letter of Steven Plitt, May 29, 2020 ("Plitt Expert Report"), p. 6 ("Mr. Garner, through his attorney, cherry-picked doctors reports to suggest the cervical radiculopathy was caused by the subject motor vehicle accident," but "the undisclosed complete medical records support the contrary conclusion.").

Plaintiff's attorney admits "selecting" a subset of "helpful" records, rather than disclosing all records related to the treatments at issue. SUF ¶ 10. According to his testimony, Mr. MacDonald selected records that "support [his] client's

9

claim" by speaking "directly to . . . the benefit" Plaintiff claimed he was receiving from the subject treatments. *Id.* ¶ 11. Indeed, "[t]he choice not to send all [VA records] was . . . because . . . we just wanted to establish medical necessity . . . without diverting focus from the bills that we were asking USAA to pay." *Id.*

Thus, in April 2017, Mr. MacDonald selected and disclosed to USAA GIC one particular VA progress note, which he felt would be helpful. Later, in February 2018, he selected and disclosed another VA progress note, this one discussing Plaintiff's threat to "blow his brains out" unless he could get the cervical surgery, and requested this specific record be forwarded to adjuster O'Grady's supervisor. *Id.* ¶¶ 11, 16. Mr. MacDonald admitted he had in his possession additional VA records that he did not submit to USAA GIC—records that would have demonstrated to USAA GIC that Mr. Garner's MRI and physical therapy were prescribed <u>before</u> the accident. *Id.* ¶¶ 10, 15.

The remainder of the VA records, and all of Plaintiff's pre-accident records, remained undisclosed, notwithstanding USAA GIC's requests for <u>all</u> pertinent medical records. *Id.* ¶¶ 2, 10, 14-15. This nondisclosure occurred despite Plaintiff's testimony that he would expect all of the records to be provided to his insurer, and despite Mr. MacDonald's testimony that "an insured should not withhold information about their injury" from the insurer. *Id.* ¶¶ 7-8.

10

There is no dispute that Plaintiff's withholding of the undisclosed records was done "knowingly." *Id.* ¶ 10 (acknowledging he had additional VA records and "did not submit them to USAA," and that the "choice to not send all" of the records to the insurer "was our choice"). *See also* **Ex. T**, Plitt Expert Report, pp. 8-10 (describing evidence of "purposeful misdirection," records "knowingly withheld," partial disclosures that were "misleading by way of omission," and "cherry-picking . . . done with deliberate design"). Nor can there be any reasonable dispute that the records were highly relevant—this Court has already so held[4]—and that their nondisclosure during the claims process was material and prejudicial to USAA GIC. *See id.* at p. 10 ("The VA records . . . are in such close temporal proximity to the subject motor vehicle accident that their materiality is beyond question."); *Keller, supra* note 4, at *2 (holding that "pre-accident medical records are . . . relevant for purposes of determining . . . whether [insured's] injuries were in fact caused by the accident, or whether they can be attributed, in whole or in part, to a pre-existing condition").

---

[4] *See* Order, March 30, 2020 (ECF No. 64), pp. 13-14 ("Medical records predating [Plaintiff's] automobile accident are . . . clearly relevant" to whether his "'alleged injuries were caused by the accident.'") (quoting *Keller v. Nat'l Farmers Union Prop. & Cas. Co.*, CV 12-72-M-DLC-JCL, 2013 WL 27731, at *2 (D. Mont. Jan. 2, 2013)).

Indeed, given that the central coverage dispute concerned whether USAA GIC would pay for Plaintiff's surgery for cervical radiculopathy, the importance of pre-accident medical records describing his "increasingly symptomatic" cervical radiculopathy cannot reasonably be disputed. SUF ¶¶ 13, 17-18. Yet, Plaintiff concealed the existence of precisely such a record: a VA medical note from two months before the accident, revealing that Plaintiff was already suffering "increasing neck pain" (*i.e.*, "[c]ervical radiculopathy") for which the doctor recommended "imaging studies" (*i.e.*, an MRI) and "referral to physical therapy." *Id.* ¶ 17. A physical therapy consult was thus scheduled, and took place <u>less than three weeks before</u> the subject accident, according to another undisclosed pre-accident VA record that discusses Plaintiff's "cervical radiculopathy for past one year" and his worsening "right cervical / shoulder" symptoms. *Id.* ¶ 18.

Simply put, Plaintiff's "active and ongoing pre-accident conditions were present right up until the point of the actual subject motor vehicle accident occurring." **Ex. T**, Plitt Expert Report, p. 6 "The significance of these medical records . . . is that in very close proximity to the subject motor vehicle accident, but prior to [it], Plaintiff Garner was having significant symptoms of cervical spine pain such that an MRI had been scheduled prior to the . . . accident." *Id.*

12

Yet Plaintiff never disclosed to USAA GIC that the MRI for which he demanded medical payments coverage was scheduled before the accident. SUF ¶ 19. And Plaintiff never disclosed to USAA GIC that he received a prescription for physical therapy before the accident as well. *Id.* ¶ 21. Instead, Plaintiff, through his attorney, selected medical records to support Plaintiff's claim for payment for these treatments as related to the accident, including records that stated Mr. Garner did <u>not</u> have any neck pain before the accident. *Id.* ¶¶ 11-12, 16. Deceived by the nondisclosure, USAA GIC paid for the MRI and physical therapy. *Id.* ¶¶ 20, 22.

**B.     Plaintiff's Material Misrepresentations Vitiate Coverage**

Courts routinely hold that, where there is misrepresentation or concealment of facts such as these, it precludes coverage. For example, in *McDonald v. N. Ben. Ass'n*, 131 P.2d 479, 482 (Mont. 1942), the Montana Supreme Court rejected a widow's plea for payment of a death benefit because of her late husband's concealment of relevant medical history in his insurance application.[5] Opining that

---

[5] *McDonald* is cited for the general proposition that misrepresentations about an insured's medical history may be material, entitling an insurer to relief. It is not offered for the specific issue of misrepresentations in insurance *applications* (which are now governed by Mont. Code Ann. § 33-15-403), as the misrepresentations by Plaintiff herein were not made in a policy application, but regarding a claim under the policy. Thus, recent changes in Montana law as to rescission under § 33-15-403 have no bearing on this case. *See ALPS Prop. & Cas. Ins. Co. v. McLean & McLean, PLLP*, 425 P.3d 651, 659 (Mont. 2018) (finding no rescission right in § 33-15-403); 2019 Montana Laws Ch. 315 (S.B. 240) (amending statute to permit rescission).

13

"[e]ach party to a contract of insurance must communicate to the other, in good faith, all [material] facts within his knowledge," the Court enforced policy language providing that "no liability shall exist" if answers to certain questions about the insured's health and medical history "are found to be untrue." *Id.* Thus, no benefit was owed where the husband had falsely "represented that he was in good health and free from disease"; that he "had not within the last five years consulted a doctor for any cause"; and that he "had never consulted a physician for any of certain named diseases or disabilities." The husband was <u>not</u> in good health, had been "treated for high blood pressure and other diseases enumerated in the application," and had "consulted a doctor on numerous occasions" within the prior five years. *Id.* Yet he had represented otherwise "with intent to deceive and defraud." *Id.* at 485.

The defendant in *McDonald* prevailed because there is no coverage when "the insured intentionally conceals facts which are material, or makes false representations with reference to them, intending to mislead the insurer." *Id.*

---

Indeed, as *ALPS* points out, "even absent the remedy of rescission, [the insurer] may properly deny coverage" of claims by insureds who make material misrepresentations. *Id.* at 659–660 (explaining that insurer was unquestionably "within its rights to prevent any recovery sought under the Policy" by the party who misrepresented material facts).

14

(quoting *Williams v. Mut. Life Ins. Co. of New York*, 201 P. 320, 321 (Mont. 1921)). Further, "concealment of [a] material fact is equivalent to a false representation that it does not exist." *Id. See also Tyler v. Fireman's Fund Ins. Co.*, 841 P.2d 538, 540–41 (Mont. 1992) (summarizing and relying on *McDonald*).

Likewise, in *Schlemmer v. N. Cent. Life Ins. Co.*, 37 P.3d 63, 65 (Mont. 2001), the Montana Supreme Court upheld summary judgment for the insurer based on the insured's false assertion that he "had not been diagnosed with or treated for lung disease." That was a material misrepresentation that "prevents recovery under the policy," and the "conclusion that [insured] made a material misrepresentation is legally sufficient to allow [insurer] to deny coverage under the policy." *Id.* at 66.

Numerous courts have likewise held that an insured's material misrepresentation voids coverage. *See also, generally, Perovich v. Glens Falls Ins. Co.*, 401 F.2d 145, 147 (9th Cir. 1968) (enforcing provision stating that policy "is void if the insured misrepresents any material fact"; insured's misrepresentations entitled insurer to recover its earlier payment under the policy); *Boesel v. State Farm Fire and Cas. Ins. Co.*, 565 Fed. App'x 611, 612 (9th Cir. 2014) (unpublished) **(Ex. U)** (insurer "permissibly invoked the concealment or

misrepresentation exclusion to deny the claim"[6] where insured had concealed a report indicating that certain items had a lesser value than stated, which "omission impeded [insurer's] ability to ascertain the authenticity and value" of the items); *Duke v. Hartford Fire Ins. Co.,* 617 F.2d 509, 509-10 (8th Cir. 1980) (insured's misrepresentations, including claim that he "had neither suffered burns nor received medical treatment for burns around the time of the fire," precluded recovery based on provision declaring coverage void if insured willfully conceals or misrepresents material facts); *Baldwin v. Bankers & Shippers Ins. Co. of N. Y.,* 222 F.2d 953, 954 (9th Cir. 1955) (affirming that policy was "avoided by fraud" where insured "materially misrepresented the amount of the loss"); *Herbert v. State Farm Mut. Auto. Ins. Co.,* 362 Fed. App'x 748 (9th Cir. 2010) (unpublished) **(Ex. V)** (finding insured's failure to disclose motor vehicle theft convictions a "material misrepresentation," voiding policy, in context of insurer's investigation into theft of motorcycle); *Gonzales v. Gonzales,* 20 So.3d 557, 562–63 (La. App.

---

[6] *Boesel*, in turn, cites the rule of *Am. Pepper Supply Co. v. Fed. Ins. Co.*, 93 P.3d 507, 511 (Ariz. 2004), that a "concealment or misrepresentation exclusion is met . . . [by showing] that the insured has materially misrepresented its claim or concealed evidence that would permit a fair resolution of its claim." *See also Long v. Ins. Co. of N. Am.*, 670 F.2d 930, 934 (10th Cir. 1982) (holding, as to allegations of false swearing, that an insured's misrepresentation is material if a reasonable insurer, in determining its course of action, would attach importance to the misrepresented fact).

4th Cir. 2009), *writ denied*, 27 So.3d 305 (La. 2010) (holding that insurer, after

initially making payments for medical expenses before suspicion arose, had

demonstrated fraud by insureds who gave "conflicting testimony . . . about the

cause and nature of their alleged injuries and prior medical histories," and "also

misrepresented their medical histories").

 Here, the deliberate concealment of medical records undermining Plaintiff's

claims unquestionably prejudiced USAA GIC. Had it been able to review the

withheld VA records during its adjustment of the claim, USAA GIC would not

have paid for the cervical MRI or post-accident physical therapy—both of which

were scheduled or prescribed before the accident. SUF ¶ 25. *See generally*

*Chaachou v. Am. Cent. Ins. Co.*, 241 F.2d 889, 893 (5th Cir. 1957) (opining that a

misrepresentation is material if it causes "insurer to do other than that which would

have been done had the truth been told"); *cf., Friez v. Nat'l Old Line Ins. Co.*, 703

F.2d 1093, 1095 (9th Cir. 1983) (insured's "failure to reveal treatment for ulcers

nine years earlier" did not "amount[] to a material misrepresentation" where there

was "no showing that his statement was material" or that insurer would not have

acted differently if treatment had been revealed; moreover, there was "no prejudice

to the insurer, because the cause of death was not related to an ulcer").

Plaintiff's knowing concealment of key medical records and misrepresentation of essential medical facts vitiates coverage. Because there is no coverage, the UTPA claim fails. *See EOTT*, 59 F. Supp. 2d at 1076 (explaining that, had defendants shown plaintiff submitted a false insurance claim, "this Court would have found that there was no coverage" and "Defendants would not now find themselves defending a bad faith claim."). Summary judgment should therefore be granted in favor of USAA GIC.

### C.   Plaintiff's Lack of Cooperation and Refusal to Sign a Required Medical Authorization Also Precludes Coverage

In addition to the misrepresentation provision of the Policy, Plaintiff's nondisclosure of critical information also violates the cooperation clause. *See* SUF ¶ 3 (quoting provision stating that the insured "must . . . [c]ooperate with us in the investigation . . . of any claim"). Likewise, Plaintiff's refusal to sign a medical authorization, thereby preventing USAA GIC from collecting the pertinent medical records itself (and requiring it instead to rely instead on Mr. MacDonald's gradual, piecemeal disclosure of hand-picked records favorable to Plaintiff), violates the cooperation and medical authorization provisions. *See id.* ¶ 3 (quoting policy's requirement that insureds "[a]uthorize us to obtain medical reports and other pertinent records"), ¶¶ 2-9 (discussing facts of refusal to sign authorization). For

these reasons, too, no coverage is owed, Plaintiff's UTPA claim fails, and

summary judgment is warranted.

"It is absurd to think that an insured who fails to provide her insurer with

medical information critical to a full and fair investigation of the insured's claim

should then be able to sue the insurer for refusing to pay on that same claim."

*Valentine v. State Farm Mut. Auto. Ins. Co.*, 105 F. Supp. 3d 1176, 1183 (D. Nev.

2015). Preventing such absurdity is why cooperation and authorization provisions

are important and enforceable. As one court explained,

> Typically the insurer has little or no knowledge of the facts
> surrounding a claimed loss, while the insured has exclusive
> knowledge of such facts. The insurer is, therefore, dependent on
> its insured for fair and complete disclosure; hence, the duty to
> cooperate. . . . [T]he cooperation clause does obligate the insured
> to disclose all of the facts within his knowledge and otherwise to
> aid the insurer in its determination of coverage under the policy.
> The insurer is entitled . . . to gain as much knowledge and
> information as may aid it in its investigation, or as may otherwise
> be significant to the insurer in determining its liability under the
> policy and in protecting against fraudulent claims. To hold
> otherwise effectively places the insurer at the mercy of the
> insured and severely handicaps it in contesting a claim.

*Waste Mgmt., Inc. v. Int'l Surplus Lines Ins. Co.*, 579 N.E.2d 322, 333 (Ill. 1991).

If an insured has "failed to cooperate with [the insurer] in handling the

claim" for which it later files suit, that failure "precludes any . . . recovery under

the Policy." *Seymour, supra*, 2014 WL 12545877, at *8. On this basis, the insurer

19

in *Seymour* was entitled to summary judgment on its uncooperative insured's claim for a larger hail-damage payment, where "it was incumbent upon [the insured] to secure a written estimate of damages," but "[f]or reasons not explained, instead of securing a written estimate in compliance with the Policy, the [insured] commenced . . . litigation." *Id.* at *6–7. *See also Contractors Bonding & Ins. Co. v. Sandrock*, 321 F. Supp. 3d 1205, 1211–12 (D. Mont. 2018) (granting summary judgment where insured's failure to provide timely notice "prevented any opportunity to investigate the facts" and materially prejudiced the insurer).

Here, as in *Valentine* and *Seymour*, Plaintiff's noncooperation—including his failure to provide the required medical authorizations—constitutes a material breach that has prejudiced USAA GIC. SUF ¶¶ 3-6, 25. "If the insured is unwilling to assist the insurer in determining whether particular injuries resulted from an accident covered by the insured's policy rather than a pre-existing condition, then certainly the insured has failed to cooperate." *Valentine*, *supra* at 1182–83. "[The insured] is therefore precluded from maintaining suit against [the insurer] since cooperation is a condition of her coverage and therefore a prerequisite to legal action." *Id.* at 1183.

The same preclusion rule applies with respect to the medical authorization clause. *See* SUF ¶ 3. Plaintiff's breach of that clause is material because it

prevented USAA GIC from obtaining a complete set of his medical records—

records which, as set forth in the immediately preceding section, would have

significantly altered USAA GIC's claims handling if proper disclosure had

occurred. *Id.* ¶ 25. An insured's complete medical records, including relevant pre-

accident records, are fundamental to an insurer's ability to evaluate the cause and

extent of the insured's injuries from an accident. *Supra* note 4. Plaintiff

understands that, as an insured making a claim under the Policy, he has a duty to

cooperate with USAA GIC and authorize USAA GIC to obtain medical

information, *id.* ¶ 4, and he did not expect USAA GIC to rely on incomplete

information, *id.* ¶ 8. But the undisputed facts demonstrate Plaintiff refused to

provide a release and his attorney failed to provide the other VA records in his

possession, even after adjuster Veronica O'Grady requested them specifically. *Id.*

¶¶ 5, 15.

      In sum, as this Court held in *Seymour*, insurers "suffer prejudice" when they

are "inhibited in their effort to process claims due to the uncooperativeness of the

insured," because that uncooperativeness "prevents the insurer from completing a

legitimate investigation to determine whether it should provide coverage."

*Seymour, supra* at *8. (quoting *Herman v. Safeco Ins. Co. of Am.*, 17 P.3d 631,

634–635 (Wash. App. Div. 2 2001) (holding insurer "was prejudiced as a matter of

law" by insured's lack of cooperation). Plaintiff's "failure to provide documents requested by the insurer," including both authorizations and medical records themselves, is an independent basis that warrants summary judgment in USAA GIC's favor. *Id. See also Holland v. State Farm Mut. Auto. Ins. Co.*, No. 2:12-cv-01058-LDG-GWF, 2014 WL 1268712, *3-5 (D. Nev. Mar. 27, 2014) (granting summary judgment to insurer because plaintiff "refused to provide" authorizations necessary to allow insurer "to investigate and evaluate [insured's] pre-existing medical history in order to determine whether his claimed injuries were attributable to the accident").

## **CONCLUSION**

For these reasons, and based on the facts and evidence set forth in the contemporaneously filed Statement of Undisputed Facts, USAA GIC respectfully requests an Order granting summary judgment in its favor, and dismissing Plaintiff's lawsuit with prejudice.

Dated:  August 10, 2020                    Respectfully submitted,


                                           *s/ Hannah R. Seifert*
                                           Jeremy A. Moseley (#44830177)
                                           Hannah R. Seifert (#42358613)
                                           Wheeler Trigg O'Donnell LLP
                                           370 Seventeenth Street, Suite 4500
                                           Denver, Colorado  80202
                                           Telephone:  303.244.1800
                                           Facsimile: 303.244.1879
                                           Email:   moseley@wtotrial.com
                                                    seifert@wtotrial.com

                                           Attorneys for Defendant USAA General
                                           Indemnity Company

23

## <u>CERTIFICATE OF COMPLIANCE WITH L.R. 7.1(D)(2)</u>

Pursuant to Local Rule 7.1(d)(2), USAA GIC certifies its compliance with the rule. This brief contains 4,896 words, excluding the caption and this certificate of compliance, and therefore includes a Table of Contents and Table of Authorities.

Dated:  August 10, 2020                           Respectfully submitted,


*s/ Hannah R. Seifert*
Jeremy A. Moseley (#44830177)
Hannah R. Seifert (#42358613)
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, Colorado  80202
Telephone:  303.244.1800
Facsimile: 303.244.1879
Email:   moseley@wtotrial.com
             seifert@wtotrial.com

Attorneys for Defendant USAA General
Indemnity Company

## <u>CERTIFICATE OF SERVICE (CM/ECF)</u>

I HEREBY CERTIFY that on August 10, 2020, I electronically filed the foregoing **USAA GIC'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

- **Joseph Patrick Cook**
  joe@lawmontana.com, holly@lawmontana.com

- **Karl J. Englund**
  KarlJEnglund@aol.com

- **Gerry Fagan**
  Gerry.Fagan@moultonbellingham.com, Carol.Grubbs@moultonbellingham.com, Debbie.Braaten@moultonbellingham.com

- **John C. Heenan**
  john@lawmontana.com, colleen@lawmontana.com, brandi@lawmontana.com, holly@lawmontana.com

- **Spencer T. MacDonald**
  STM@BigSky.net

- **Jeremy A. Moseley**
  moseley@wtotrial.com, kern@wtotrial.com

- **Amy Cook Olson**
  acookolson@cron-law.com, tmeeks@cron-law.com, bnesis@cron-law.com

- **Hannah R. Seifert**
  seifert@wtotrial.com, lorubbio@wtotrial.com

- **DezaRae D. LaCrue**
  lacrued@fdazar.com

*s/ Hannah R. Seifert*

25